Stewart Wire Company, Appellant, v. Lehigh Coal & Navigation Company.

*Equity—Jurisdiction—Adequate remedy at law—Diversion of water—Laches—Costs.*

A bill in equity by a manufacturing corporation against a power company engaged in furnishing municipalities, street railway companies and manufacturing establishments with light and power, to restrain the defendant from diverting water from a canal, which water the plaintiff had a right to use, will be dismissed where it appears that at the time the bill was filed the plaintiff's business had been destroyed by combinations, that the damage, if any, was trifling, and could be ascertained by an action at law, that the plaintiff had long delayed asserting its right, and that the defendant was engaged in making improvements which would largely increase the capacity of the canal. In such a case it is error to impose the costs upon the defendant.

Argued March 10, 1902. Appeal, No. 270, Jan. T., 1902, by plaintiff, from decree of C. P. Northampton County, April T., 1901, No. 1, dismissing bill in equity in case of Stewart Wire Company v. Lehigh Coal & Navigation Company and the Easton Power Company of Pennsylvania. Before DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Bill in equity for an injunction.

From the record it appeared that the Stewart Wire Company, the plaintiff, and the Easton Power Company had both been granted the right to use the water of a canal owned by the Lehigh Coal & Navigation Company. The plaintiff was a manufacturing corporation, but at the time the bill was filed it was practically out of business. The Easton Power Company was engaged in furnishing light and power to the city of Easton, the town of Phillipsburg, New Jersey, to the electric railways of Easton, and to various manufacturing corporations. The evidence showed that the plaintiff had delayed for many months in filing its bill. It also appeared that the defendant was engaged in an extensive work of improvement which would shortly greatly enlarge the capacity of the canal. The court dismissed the bill, but imposed the costs upon the defendants.

*Error assigned* among others was the decree of the court.

*H. J. Steele*, with him *W. S. Kirkpatrick*, for appellant.— Equity had jurisdiction : Evans v. Reading Chemical Fertilizing Co., 160 Pa. 220; Beech v. Kuder, 15 Pa. Superior Ct. 89; Higgins v. Flemington Water Co., 36 N. J. Equity Rep. 538; Walters v. McElroy, 151 Pa. 549; Penna. Lead Co's. App., 96 Pa. 127; Spokes v. Banbury Board of Health, L. R. 1 Eq. Cases, 46; Stock v. Jefferson, 38 L. R. A. 355 ; Keppel v. Lehigh Coal & Navigation Co., 200 Pa. 649 ; Chesapeake & Ohio Canal Co. v. Hill, 15 Wall. (82 U. S.) 94.

The court having found the value of the plant, its rental value and the amount paid annually by the plaintiff to the navigation company for water, it would seem quite simple on the basis of the claim as stated to compute the damages. But the court below affirmed a request that no damage could be claimed in a case of this sort in equity. This is clearly erroneous : Keppel v. Lehigh Coal & Navigation Co., 200 Pa. 649 ; Walters v. McElroy, 151 Pa. 549; Colrick v. Swinburne, 105 N. Y. 503 (12 N. E. Repr. 427) ; Francis v. Schoellkopf, 53 N. Y. 152; Bare v. Hoffman, 79 Pa. 71 ; Duffield v. Rosenzweig, 144 Pa. 520; Hatch v. Dwight, 17 Mass. 289; Chicago v. Huenerbein, 85 Ill. 594.

*E. J. Fox*, with him *J. W. Fox*, for the Easton Power Com-

pany.—While a court of equity will sometimes issue an injunction in the case of a private trespass, it will only do so when the right is clear: Mirkil v. Morgan, 134 Pa. 144; Duncan v. Hollidaysburg and Gap Iron Works, 136 Pa. 478; Wood v. McGrath, 150 Pa. 451.

The complainant has been guilty of laches: Wahl v. M. E. Cemetery Assn., 197 Pa. 197.

If an injunction were granted, a very serious injury would result not only to the Easton Power Company, but to the public in general: Dilworth's App., 91 Pa. 247; Heilman v. Lebanon, etc., St. Ry. Co., 175 Pa. 188; Heilman v. Lebanon, etc., St. Ry. Co., 180 Pa. 627; Becker v. Lebanon, etc., St. Ry. Co., 188 Pa. 484.

There was an adequate remedy at law: Richards's App., 57 Pa. 105; Chartiers Block Coal Co. v. Mellon, 152 Pa. 286; Penna. Lead Co.'s App., 96 Pa. 116; McCaffrey's App., 105 Pa. 253; Morris Canal, etc., Co. v. Central R. R. Co., 16 N. J. Eq. 420; Earl of Ripon v. Hobart, 3 Mylne & Keen, 169; Morris, etc., R. R. Co. v. Prudden, 5 C. E. Green, 530; Erhardt v. Boaro, 113 U. S. 537 (5 Sup. Ct. Repr. 565); McCall v. Barrie, 14 W. N. C. 419; Pollitt v. Long, 58 Barbour (N. Y.), 20; Seely v. Alden, 61 Pa. 302; Bare v. Hoffman, 79 Pa. 71; Hart v. Evans, 8 Pa. 13; Merritt v. Brinkerhoff, 17 Johns. (N. Y.) 306; Platt v. Johnson, 15 Johns. (N. Y.) 213.

*W. E. Doster* and *Edward J. Fox*, for the Lehigh Coal & Navigation Company.

OPINION BY MR. JUSTICE BROWN, October 13, 1902:

The bill in this case was properly dismissed by the court below, but we do not approve what seems to have been the controlling reason in doing so; for the doctrine of " the balancing of conveniences " was not involved. Other and fundamental reasons existed why the relief asked for should not have been granted. The sixteenth finding of fact, found at the request of the Lehigh Coal & Navigation Company, was as follows: " The testimony warrants the court in finding that the business of the plaintiffs was destroyed by combinations long before the grant to the power company, that they could not manufacture rods or buy rods, that they made no profits, never declared any

dividends, and were at the time of filing this bill a moribund concern; further, that the plaintiffs have for years asked for, and obtained, reductions of rent from their lessors on the ground that they were not using the power, and that their business has been destroyed by combinations." The twenty-fifth finding, at the request of the same defendant, was: " The plans above referred to for enlarging the capacity of the canal have added to the supply at this time, and when completed, will furnish an adequate supply for all parties to this litigation." At the instance of the Easton Power Company, the other defendant, the fourteenth finding was: " The undisputed testimony is that the Stewart Wire Company does little or no business; that it has not paid a dividend since the organization was formed; that during the year ending June 1, 1900, there was a large deficit; that they have not manufactured wire at a profit at any period since 1893; that they had not on hand at the time of the alleged grievances, any contracts, the completion of which was interfered with; that its property is dilapidated and out of repair; that it only employs three wire drawers and cannot be considered a working concern;" and the nineteenth was: "In the plans prepared by Mr. John Ruddle and Mr. J. Madison Porter, the engineers appointed respectively by the Lehigh Coal & Navigation Company and the Easton Power Company, the capacity of that level of the canal will be so enlarged and increased that there will be ample power, not only for the Stewart Wire Company but for the grant contained in the agreement between the Easton Power Company and the Lehigh Coal & Navigation Company, dated May 1, 1899. These improvements, if completed, will in all probability prevent any recurrence of the alleged grievance complained of in the bill of complaint."

In view of the foregoing findings, fully warranted by the evidence, there was no such irreparable and continuing injury resulting to the appellant from the alleged improper diversion of the water power by the appellees, even in the face of the facts found at plaintiff's request, as would have justified the injunction prayed for, and the proper reason for refusing it was given by the learned judge when he said, "if the injunction should be withheld the actual damage to the plaintiff would be but trifling and easily compensated by a common-law action."

Again, the laches of the appellant in instituting this proceeding, though not raised in the pleadings and not discussed in the hearing below, as stated by the learned judge, cannot be overlooked, for, under the facts in the case, it, without more, is in the way of equitable relief.

" Relief by injunction is not controlled by arbitrary or technical rules, but the application for its exercise is addressed to the conscience and sound discretion of the court. Where a party seeks the intervention of a court of equity to protect his rights by injunction, the application must be seasonably made, or the rights may be lost, at least so far as equitable intervention is concerned. It is a rule practically without exception that a court of equity will not grant relief by injunction where the party seeking it, being cognizant of his rights, does not take those steps to assert them which are open to him, but lies by and suffers his adversary to incur expenses and enter into burdensome engagements which would render the granting of an injunction against the completion of his undertaking, or the use thereof when completed, a great injury to him. A suitor who by laches has made it impossible for a court to enjoin his adversary without inflicting great injury upon him will be left to pursue his ordinary legal remedy. This rule is especially applicable where the object of the injunction is to restrain the completion or use of public works, and where the granting of the injunction would operate injuriously to the public as well as to the party against whom the injunction is sought: " 16 Am. & Eng. Ency. of Law (2d ed.), p. 356.

The sixteenth finding of fact at the request of the Easton Power Company was : " The Easton Power Company is engaged in supplying electric light and power to the citizens and residents of the city of Easton, and the territory adjacent thereto, including the town of Phillipsburg, in the state of New Jersey. It is the only company furnishing electric light either in Easton or in Phillipsburg, covering a population of about 40,000 people. The Easton Power Company also supplies the municipal lighting for the town of Phillipsburg. It also supplies power for the entire system of street railways in the city of Easton and in the town of Phillipsburg, carrying about 15,000 passengers daily. It supplies power for the operation of the system of the Easton, Palmer and Bethlehem Street Railway

Company, carrying passengers from Easton to Bethlehem. It also supplies light and power to the Ingersoll-Sergeant Drill Company, a large manufacturing establishment adjacent to the city of Easton, and also supplies light and power to other large manufacturing establishments in the said district." In view of the service rendered to the public by the Easton Power Company, as so found by the court below, the rule as to laches is as properly applicable as in a case of purely public works.

The appeal is dismissed at appellant's cost without prejudice to any rights it may have at law.