## Alitto et ux. v. Tucci et ux.

*George Kunkel*, for plaintiffs; *Wickersham & Neely*, for defendants.

Fox, J., May 23, 1928.—The bill avers that the plaintiffs, husband and wife, are the owners by entireties of No. 808 North Third Street and that the defendants are the owners by entireties of the adjoining property, No. 806 North Third Street; that the division-line between said properties runs through the centre of the party-wall, in which, prior to June 6, 1927, there was a chimney commencing just below the second floor of said properties and extending above the roof; that in the lower end of said chimney in each house, just below the ceiling of the first floors, there were round openings in the walls for the insertion of stovepipes, at one time used in the heating of the front rooms of said adjoining properties; that on June 6, 1927, the defendants, through their agent, Minich, a contractor, built an extension of said chimney downward in their house and in doing this encroached on the property of the plaintiffs; that the commencement of the construction of said chimney was without the knowledge, consent or authority of the plaintiffs; that in the construction the plaintiffs' cellar-wall was penetrated, a joist in plaintiffs' house cut and a brick chimney built projecting into plaintiffs' cellar, the defendants then broke through plaintiffs' first floor, began throwing down the plaster, which the plaintiffs allege was the first knowledge they had of the intrusion. Whereupon they objected to the defendants, and the latter, by their agents, promised that when the extension was finished, the said first floor wall would be restored to its original condition; that the work was finished on June 9th and now remains as a permanent encroachment on plaintiffs' property; that said encroachment extends in length from a point just below the ceiling of the first floor a distance of 11 feet 3 inches downward into the cellar, and projects into the plaintiffs' property about 8 inches, and they pray that a mandatory injunction issue compelling the defendants to remove the extension of said chimney from plaintiffs' property and commanding the defendants to restore the walls and floor to the same condition as they existed prior to the building of the chimney and that damages be awarded to the plaintiffs for the loss they sustained by the trespass.

The answer filed in substance avers that the building of the chimney was commenced with the knowledge, authority and consent of the plaintiffs, they being present at the time of the commencement of the work and the completion thereof, and that they gave their full consent to all that was done, with the full understanding that they might at any time in the future use the said chimney in common with the defendants.

## Findings of fact.

1. The plaintiffs, Ipolitto Alitto and Clementina Alitto, husband and wife, are the owners by entireties of the property on the western side of North Third Street, fronting 15 feet on Third Street and extending in depth 75 feet, on which is erected a three-story brick dwelling-house, known as No. 808 North Third Street.

2. The defendants, Samuel Tucci and Minnie Tucci, husband and wife, are the owners by entireties of the property adjoining the plaintiffs' property on the south, fronting 15 feet on Third Street and extending in depth 78 feet, on which is erected a three-story brick dwelling-house, known as No. 806 North Third Street.

3. That the division-line between the parties' properties runs through the centre of a 10 and 8-inch party-wall.

4. That a chimney existed between the two houses running through the centre of the party-wall, commencing just below the second floor of said property and extending up through the party-wall above the roof.

5. That on June 6, 1927, the defendants, by their contractor, who acted as their agent and under their instruction, began to build an extension, extending the chimney then existing in the party-wall downward into the cellars of both houses.

6. The work of building the chimney downward from the top of the first floor to the cellar was commenced by the defendants without the knowledge or consent of the plaintiffs.

7. The defendants, by their contractor or agent, took down so much of the party-wall as was necessary for the downward extension of the chimney, first believing that said party-wall was 12 inches in thickness and that the chimney could be built entirely on the side of the defendants.

8. That the party-wall was but 8 inches in thickness and the defendants found it impossible to build the chimney on their side.

9. That the defendants tore down a part of the plaintiffs' cellar-wall or foundation, cut a joist in the plaintiffs' property, built in the foundation-wall projecting into the plaintiffs' cellar beyond the line of the former foundation-wall 4½ inches, without the knowledge, authority or consent of the plaintiffs.

10. That upon this new portion built in the foundation-wall was erected the rest of the chimney, extending upwards through the floor of the first story to a point about 1½ feet above the floor level.

11. That up to the time that the extension of the chimney had reached about 1½ feet above the floor level, the plaintiffs objected to any encroachment, and at the time a writing was executed by Ipolitto Alitto as follows: "We give you the right to cutter the wall if you fix it up the way it was when you started." Not assented to by plaintiff Clementina Alitto.

12. That after the writing was executed, plaster dropped on the side of the plaintiffs into their storeroom, injuring certain goods of merchandise, and the plaintiffs further objected to the encroachment.

13. On June 7, 1927, when the defendant finished building the chimney, the wall thereof extended over the line of and into the plaintiffs' property

4½ inches to a line below the first floor where the new chimney was tied into the old one.

14. The chimney as extended from the upper part of the first floor into the cellar is in length 11 feet 3 inches, in width 1 foot 5 inches, and projects into the plaintiffs' property over the division-line between the properties of plaintiffs and defendants a distance of 9½ inches, making an encroachment on the plaintiffs' property beyond the outer line of the original party-wall of 4½ inches.

15. That the same was done without the consent or authority of the plaintiffs.

16. That the plaintiffs were not deprived of conducting their business in their store.

## Discussion.

A careful reading of the notes of testimony taken in this case discloses that the defendants were of the opinion that the party-wall between the properties of the parties was a 12-inch wall into which the defendants could build a chimney upon their side of the line between the properties without encroaching upon the property of the plaintiffs, and, thus believing, proceeded to take out the plastering and wall within the line of their own property. They soon discovered that the thickness of the wall instead of being 12 inches was but 8 inches, which made it impossible to build the proposed chimney within the lines of the defendants. They then went into the cellar and, without the knowledge of the plaintiffs, took out a section of the foundation-wall, which was 10 inches within the plaintiffs' lines as well as within their own lines, and proceeded to build the chimney equally distant over the line of the two properties. The brick chimney was built 1 foot 5 inches one way in width and 9½ inches the other. They sawed off a joist in the plaintiffs' cellar. They proceeded to build upward a chimney, breaking through the floor of the plaintiffs, and had proceeded to about 1½ feet above the floor level, when the plaintiffs objected to this intrusion. After some talk by the husband of the plaintiffs and the husband and the contractor of the defendants, the husband of the plaintiffs was assured that the wall would not encroach more than 2½ inches beyond the building-line and a writing was signed by the husband of the plaintiffs, which is as follows, "We give you the right to cutter the wall if you fix it up the way it was when you started," and the defendants proceeded with the work. Afterwards, when the plastering on the side of the plaintiffs was taken down, some of it fell and raised and spread dust, which fell and stayed upon some of the merchandise of the plaintiffs, spoiling it and rendering it unmarketable and thus causing a loss to the plaintiffs, when a protest and objection was again made by the plaintiffs, but, notwithstanding, the defendants proceeded and completed the chimney as hereinbefore described and tied it in above with the old chimney.

The defense in this case is that this encroachment was made by and with the knowledge and consent of the plaintiffs.

We do not think, considering the whole of this testimony, that there was a clear understanding and full knowledge of what this intrusion was to be or consent thereto given on the part of the plaintiffs, nor do we think that it is clearly proved.

In the case of Baugh v. Bergdoll, 227 Pa. 420, the court said: "The obvious effect of the decree entered, if permitted to stand, would be to compel the appellants to submit to a divestiture of title simply for the accommodation of the appellees and accept in return whatever amount a jury might determine to be compensatory damages. Where one intrudes upon the land of another, the latter has the choice of remedies; he may compel a withdrawal of the intruder or he may regard the intrusion as a permanent trespass and recover

compensatory damages therefor. Except he has forfeited his right to the former remedy by conduct which would make its enforcement inequitable, he cannot be denied his privilege to pursue it."

The entry by one upon the land of another is an encroachment and is of a somewhat serious consequence and can be done only by inducement, acquiescence or permission or by laches.

In the case of Bradley *v.* American Teleg. & Telep. Co., 54 Pa. Superior Ct. 388, the court, at page 400, said: "When a person excuses what would otherwise be a trespass on the ground of a parol license, such license should be clearly established."

The excuse given in this case is not only by parol license but also by one in writing. Taking the testimony as relating to the license as parol, we do not think that it is clearly established, and considering the alleged license by the writing, we think the same principle should apply, and it is far from being clear. The writing which was given by the husband of the plaintiffs was: "We give you the right to cutter the wall if you fix it the way it was when you started." Construing the plain meaning of these words, it is that there should be no change in the wall in the plaintiffs' property and, therefore, no encroachment. Even if it should be construed to give the right of an encroachment, the testimony of the witness, Minnich, called by the defendants, is that he told the husband of the plaintiffs that the wall would encroach over his line 2½ inches, when in fact it encroaches beyond the old line 4½ inches. This license, if it would amount to such, however, is not joined in by the wife, one of the plaintiffs, nor can we find that she joined in the alleged parol license. We think the consent or acquiescence of both joint tenants is necessary in such a case as this.

The undisputed testimony of the plaintiffs is that they were damaged by the injury of merchandise.

The plaintiffs have given a list of the merchandise and the selling prices and in total it amounts to $115.15. We do not think, however, that the prices at which the plaintiffs sold these different kinds of goods is the fair measure of damages; they are all goods that can be readily bought by the plaintiffs in the market at wholesale prices, lower than their selling prices. The testimony of the plaintiffs is that the goods were totally destroyed and were thrown away. We think the fair measure of damages would be the cost of restoration and not the amount at which the plaintiffs were selling them, which included a profit. We have no evidence of what the purchase prices in the nearest market of these goods would have been to the plaintiffs. We do not think that they have adopted the true measure of damage in their proof, and they are, therefore, not entitled to a money verdict for the said goods. They also claim for profits at $20 a day. The testimony does not disclose that the plaintiffs were entirely excluded from their business, but, on the other hand, it discloses that the business was being conducted for a part of the time at least. We do not think this testimony sufficiently certain upon which a money loss can be computed.

### Conclusions of law.

1. The defendants have permanently trespassed upon plaintiffs' property.

2. The chimney as built by the defendants is a permanent intrusion on the property of the plaintiffs.

3. The plaintiffs may pursue the remedy in equity.

4. The plaintiffs are not estopped from seeking equitable relief by consent, acquiescence, inducement or laches.

5. The plaintiffs are entitled to a mandatory injunction for the removal of the encroachment.

6. The plaintiffs are not entitled under the evidence to damages for injury to their merchandise, not having proved the correct measure of damages.

### Decree nisi.

And now, May 24, 1928, upon due consideration of the above case, it is hereby ordered, adjudged and decreed that the defendants, Samuel Tucci and Minnie Tucci, are hereby restrained and enjoined from using or maintaining that part of the chimney built over and within the lines of the plaintiffs and encroaching on their property over the party-line between the houses of plaintiffs and defendants, Nos. 806 and 808 North Third Street, respectively, in the City of Harrisburg, Pa., and that they remove the chimney thus erected and intruding and restore the wall and repair the joist partially and wrongfully removed by them.

From Homer L. Kreider, Harrisburg, Pa.