Soifer et ux. *v.* Stein et ux., Appellants.

136

Argued November 17, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Whitmore, JJ.

*A. B. Geary* of *Geary and Rankin,* for appellants, cited: Maier v. Walborn, 84 Pa. Superior Ct. 522; Rozelle v. Lewis, 37 Pa. Superior Ct. 563; Grier v. Penna. Coal Co., 128 Pa. 79; Keller v. Over, 136 Pa. 1; Powers Appeal, 125 Pa. 175.

*John E. McDonough,* for appellees.

Opinion by Linn, J., March 9, 1931:

This appeal is from a mandatory injunction requiring the removal of a garage wall built by defendants on plaintiffs' land in the City of Chester.

The encroachment is 20 feet long, 8 inches wide at one end and about 17 inches at the other; it is part of a one story brick garage, 20 feet by 18 feet, built on concrete foundations, which defendants erroneously thought they were building wholly on their own lot. Early in the trial it appeared that their position was that plaintiffs has "misled" defendants by planting a hedge on the boundary line. In the answer,

the averment was that the "garage is constructed entirely on the land of the defendants' side of the hedge which was planted by the plaintiffs as aforesaid to indicate the boundary line between the properties."

No objection to the jurisdiction in equity was made in time; we can therefore not now consider appellants' point that title to the occupied land should have been settled at law: Wright v. Barber, 270 Pa. 186, 190.

In 1924, Wetherill owned a block of vacant land, 600 feet long by 140 feet deep, bounded on the east by Melrose Avenue, on the south by 21st Street, on the west by Hyatt Street and on the north by an alley. He first sold to plaintiffs a lot 60 by 140 feet at the eastern or Melrose Avenue end, conveying to them a frontage of 140 feet on Melrose Avenue and 60 feet on 21st Street. Their deed was dated April, 1924, and was duly recorded; soon thereafter they built a dwelling house and a garage on the lot.

In June 1925, Wetherill sold a lot adjoining plaintiffs' lot to Mrs. Stein (who, with her husband, is also a defendant) conveying to her a frontage of 53 feet 9½ inches on 21st Street, with a depth of 140 feet between parallel lines, extending to the alley on the north. Defendants built a dwelling on their lot, and, in March, 1926, the garage in question.

In August, 1927, plaintiff discovered that the garage encroached on their lot, and, on defendants' refusal to remove it, filed this bill October 20, 1927.

No official surveys of the lots were made prior to building; the parties relied on measurements made by the contractors who built their houses. In September 1927, plaintiffs had an official survey made by the assistant engineer for the city of Chester, which was subsequently checked by the city-engineer; both testified to its accuracy, and no evidence contradicting it was offered. This survey located on the ground the lines of the respective lots in their relation to each

other and to the city street lines, and established the dimensions of encroachment stated above.

Plaintiffs had planted a privet hedge, beginning at the 21st Street front of their lot, and extending rearward 60 feet toward the alley; if they intended to plant it on the line separating the lots, they were mistaken, for, as the official survey disclosed, the hedge was not quite on the boundary, but was inside their lot. Though the witnesses differ about the length of the hedge, we must accept the finding made, that it was 60 feet. When defendants had their garage built, the builder apparently assumed that the line of the hedge, if projected rearward, would be the boundary between the lots, and located the garage accordingly, while he built inside the line of the hedge, he still got over on plaintiffs' land. Neither Wetherill nor plaintiffs had established monuments on the ground; nor were there any contractual relations between these adjoining owners concerning the division line of their lots.

Defendants bought from Wetherill a lot described by metes and bounds, and not a lot described as west of the hedge. The chancellor has found that the garage was constructed "about the first of March 1924;" we assume that he meant in March 1926, and not 1924, because two witnesses testified that it was built "in the spring of 1926," and defendants had not yet acquired the land in 1924. They acquired no title to the strip, 8 inches by 17 inches by 20 feet, by building their garage on it, and if plaintiffs had brought ejectment and obtained judgment, the portion of the garage built on their land would have belonged to them and not to defendants.

Appellants contend that where, as here, both parties have mistaken a common boundary line, it is inequitable to grant a mandatory injunction, after plaintiffs have waited to assert their claim a year and a half after the mistake. Whether such injunction

shall be granted in any case, depends on the wise exercise of discretion vested in the chancellor, (Youse v. McCarthy, 51 Pa. Superior Ct. 306, 311; Glinn v. Silver, 64 Pa. Superior Ct. 383, 385; Mayer's App., 73 Pa. 164, 168; Stewart Wire Co. v. Lehigh C. & N. Co., 203 Pa. 474, 478) but it must be a judicial discretion exercised according to something like a settled rule.

The encroachment resulted from defendants' mistake; they are trespassers. "Where one intrudes upon the land of another, the latter has choice of remedies; he may compel a withdrawal of the intruder, or he may regard the intrusion as a permanent trespass and recover compensatory damages therefor:" Baugh v. Bergdole, 227 Pa. 420, 421. In Thompson v. DeLong, 71 Pa. Superior Ct. 282, and 73 Pa. Superior Ct. 143, plaintiff treated the tort as a permanent trespass and recovered damages; also see Schlichtkrull v. Oil Co., 301 Pa. 553, 558. When, as here, such parties appeal to a chancellor to compel the withdrawal of the intruder, they call into action certain well recognized rules administered by courts of equity; if it appear that they have delayed asserting their right for a time that shall be considered unreasonable in the circumstances disclosed, equity will decline to remove the trespasser, but, it will not refuse relief; having heard the case, the court will assess and award damages resulting to plaintiffs by the trespass of the defendants. In the circumstance described above, the plaintiffs waited eighteen months before filing their bill; they saw the trespass begun; they saw it continue; they lived on the lot while the work was going on, and ever since. Did the chancellor wisely exercise his power when he ordered the removal of the encroachment? Should he not have held that, after such a long period of non-action, plaintiffs had lost their claim to the more rigorous exercise of his power, and were entitled only to compensation?

In considering what has been held in other cases we note that it has been deemed immaterial—at least not controlling—that parties were mistaken as to the exact location of their boundary line. In Pile's and Pedrick's Appeals, 167 Pa. 296, 300, the wall, which was the subject of complaint, was wrongly located by the mistake of the district surveyor, but, as complaint was made before the wall was completed, the trespasser was ordered to remove the encroachment. In Wagner v. King, 41 Pa. Superior Ct. 292, adjoining owners agreed that plaintiff might build a retaining wall on defendant's land along the boundary, to furnish lateral support for defendant's ground; about six months, or less, afterwards (as appears by the printed record), a dispute about the wall arose, and it was discovered that, instead of having built it exactly on the line, plaintiff built it so far on defendant's side as, in effect, to widen plaintiff's passage-way on his side of the wall by a strip varying from three and a half inches to seven inches taken from defendant. Plaintiff filed a bill to restrain defendant from destroying the wall, and defendant filed a cross-bill, praying for its removal; the court ordered that the wall be removed so that it would be exactly on the boundary line as the parties had originally agreed; in the circumstances, six months was not considered too long a wait. In Mayer's Appeal, 73 Pa. 164, a mandatory order to remove an encroachment (a division wall) was refused, although the trespass was discovered and complained of before the building was completed; the chancellor was influenced by the fact that, with knowledge of the encroachment, the plaintiff had paid for the use of the party wall; the case is however, important as throwing light on the manner in which discretion in such cases is exercised. In Orne v. Fridenberg, 143 Pa. 487, 500, there is a dictum to the effect that where ''plaintiff lies by for a period of four or five months permitting defendants to go on

with the erection in disregard of the covenant [imposing restrictions], he will be denied relief by injunction." In Maier v. Walborn, 84 Pa. Superior Ct. 522, plaintiff waited almost three years before complaining, and we held she was not entitled to equitable relief after that delay; in Hohl v. Modell, 264 Pa. 516, a delay of three years was considered too long, "for he would enforce a building restriction by injunction must act promptly."

In Mulville v. Cooper, 93 Pa. Superior Ct. 139 plaintiff moved within a few months and obtained relief. In Glinn v. Silver, supra, plaintiff was responsible for the existence of defendant's encroachment, and for that reason was refused relief.

Laches or acquiescence do not depend on time alone, but on diligence in ascertaining rights and asserting them; indifference may become acquiescence: McGrann v. Allen, 291 Pa. 574, 578; Fidelity Phila. Tr. Co. v. Simpson, 293 Pa. 577, 585.

In Baugh v. Bergdoll, supra, the encroachment was underground, and was intentionally made as "absolutely necessary" and according to "the custom of the building trade," but it was held that a mandatory injunction should be granted; see, too Piper v. Queeney, 282 Pa. 135, 145; Dodson v. Brown, 70 Pa. Superior Ct. 359.

Parties who see an adjoining owner begin and complete a construction on what he regards as his lot, who know, or by means of simple inquiry can be informed, of their division line, do not, by delaying inquiry and suit substantially eighteen months, act with such diligence as will warrant a mandatory order to restore the status quo; they are entitled only to compensation for the permanent trespass resulting from the construction of the garage on plaintiffs' land as shown in the record.

The decree is reversed and the record is remitted

for further proceedings not inconsistent with this opinion; costs of this appeal to be paid as the chancellor may ultimately determine.